DJW/bh

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**MEITLER CONSULTING, INC.,**

                               **Plaintiff,**

                                                        **CIVIL ACTION**

**v.**

                                                        **No. 05-2126-DJW**

**GARY L. DOOLEY, et al.,**

                            **Defendants.**

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiff's Amended Application for Default Judgment (doc. 45). For the reasons set forth below, the Court declines at this time to enter an award of damages, and will hold an evidentiary hearing to determine the amount of Plaintiff's compensatory and punitive damages. Further, the Court holds that Plaintiff is entitled to permanent injunctive relief. The Court finds that further evidence need not be presented for the Court to determine the scope of the injunctive relief. The Court will issue its injunction at the time it enters the damages award.

## I.    Background Information

On February 6, 2006, the Court entered default judgment against Defendant Gary Dooley as a sanction for his failure to appear for his deposition and failure to respond to the Court's December 13, 2006 Show Cause Order.[1] The Court directed Plaintiff to file, pursuant to Federal Rule of Civil Procedure 55(b)(2), "an application for default judgment and documentation that would permit the Court to determine the amount and nature of the judgment to be entered against

---

[1] *See* Mem. & Order, Feb. 6, 2006 (doc. 41).

Mr. Dooley."[2] The Order indicated that, after reviewing the application, the Court would determine whether a hearing was necessary.

Plaintiff has filed an Amended Application for Default Judgment (doc. 45), requesting that the Court do the following:

1.    Enter judgment in favor of Plaintiff on its breach of contract, conversion and trade secret misappropriation claims;

2.    Enter judgment in favor of Plaintiff on its request for injunctive relief (tracking Paragraphs 1-3 of the Temporary Restraining Order (doc. 13));

3.    Award Plaintiff $25,400 in compensatory damages;

4.    Make a finding that Mr. Dooley acted willfully and maliciously and award Plaintiff punitive damages in the amount of $50,000; and

5.    Award Plaintiff attorney fees pursuant to K.S.A. 60-3323, which provides for the award of attorney fees for willful and malicious misappropriation.

Mr. Dooley has filed no response to the Amended Application.

## II.    Discussion

### A.    Applicable Law

Rule 55(b)(2) governs the entry of default judgment by the court.  It states:

If, in order to enable the court enter judgment or to carry it into effect, it is necessary to take into account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper . . . .[3]

_____

[2]*Id.* at 7.

[3]This is in contrast to default judgments entered by the clerk under Rule 55(b)(1).  That rule provides:  "When the plaintiff's claim . . . is for a sum certain or a for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount

(continued...)

If the court does hold a hearing, any party in default who has appeared in the action must be given at least three days notice of the hearing.[4]

The Tenth Circuit has held that a court may enter a default judgment without a hearing "if the amount claimed is a liquidated sum or one capable of mathematical calculation."[5]  The Tenth Circuit will review a district court's entry of default judgment for an abuse of discretion, considering the totality of the circumstances.[6]  "[C]onsiderable deference is given the trial judge's determination regarding the default judgment since he is the person most familiar with the circumstances of the case and, thus, is in the best position to evaluate the good faith and credibility of the parties . . . ."[7]  The Tenth Circuit will find an abuse of discretion only if it is left with "a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors."[8]

---

[3](...continued)
due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear . . . ."  Fed. R. Civ. P. 55(b)(1).

[4]Fed. R. Civ. P. 55(b)(2).

[5]*Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985) (citing *Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983)).

[6]*In re Rains,* 946 F.2d 731, 732 (10th Cir. 1991); *Ikerd v. Lacy*, 852 F.2d 1256, 1258 (10th Cir. 1988).

[7]*Nikwei v. Ross Sch. of Aviation, Inc.*, 822 F.2d 939, 941 (10th Cir. 1987).

[8]*Rains,* 946 F.2d at 732 (quoting *U.S. v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980)).

3

**B.     Liability**

Plaintiff sues Gary Dooley for breach of a Brokerage Agreement and an Employment Agreement, claiming, *inter alia*, that Mr. Dooley breached the confidentiality and restrictive covenants contained in those agreements.  Plaintiff also asserts claims for conversion (converting Plaintiff's website) and misappropriation of trade secrets (misappropriating Plaintiff's customer information and customer leads).  In addition, Plaintiff asserts claims for punitive and exemplary damages, claiming that Mr. Dooley acted wilfully and maliciously.

Rule 55(b)(2) provides that the court accepts as true the allegations of the plaintiff's complaint regarding the causes of action pled.[9]  This includes any allegations that the defaulting defendant acted wilfully or wantonly so as to entitle the plaintiff to recover punitive damages.[10]

In light of these rules, the Court concludes that there is no need to hold a hearing with respect to Mr. Dooley's *liability* for the claimed breach of contract, conversion and misappropriation of trade secrets.  There is also no need to hold a hearing with respect to his *liability* for punitive damages.

---

[9]Fed. R. Civ. P. 55(b)(2); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688 at 58-59 (3d ed. 1998) and cases cited therein.  *See also U.S. v. Ware,* No. 96-2167-GTV, 1997 WL 383069, at *2 (D. Kan. June 18, 1997) ("once a court determines that a defendant is in default, the factual allegations in the plaintiff's complaint, other than damages, must be taken as true."); *Beck v. Atlantic Contracting Co., Inc*., 157 F.R.D. 61, 64 (D. Kan. 1994) ("Because the court has determined that defendant is in default, the factual allegations of plaintiff's complaint, except those relating to the amount of damages, will be taken as true.").

[10]*See Beck* v. *Atlantic Contracting Co., Inc*., No. 93-2480-JWL, 1994 WL 608598, at *1 (D. Kan. Oct. 14, 1994) (entering default judgment and accepting as true the allegations regarding the defendant's willful and wanton conduct, entitling the plaintiff to recover punitive damages).

The Court will now proceed to determine whether a hearing is necessary with respect to the relief requested by Plaintiff in its Amended Application for Default Judgment, and if a hearing is not necessary, the Court will determine the nature and amount of damages to be awarded and the nature of any injunctive relief to be entered.

###    C.    Compensatory Damages

Rule 54(c) limits the amount of damages that a plaintiff may recover on default to the amount which the plaintiff claims in the prayer for relief in the complaint.[11]  Specifically, Rule 54(c) states that "[a] judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment."[12]

Plaintiff seeks compensatory damages in excess of $75,000 on each of its causes of action for "missing out on untold numbers of customer leads," and lost sales and profits.[13]  In the application for default judgment, Plaintiff seeks to recover compensatory damages in the amount of $25,400.  Thus, Plaintiff's request is proper in that it does not exceed the amount pled in the Complaint.

The question remains, however, whether the Court should hold a hearing to determine whether Plaintiff is entitled to recover the $25,400 requested.  As noted above, the general rule in this circuit is that a district court may enter default judgment without a hearing where the amount

---

[11]*Albert v. Wesley Health Servs.*, No. 00-2067-KHV, 2001 WL 503241, at *1 (D. Kan. May 10, 2001).

[12]Fed. R. Civ. P. 54(c).

[13]Compl. (doc. 1), ¶¶ 51, 57-58, 70.

claimed is a "liquidated sum or one capable of mathematical calculation."[14]  This Court has stated the rule conversely, as follows:  "When the sum . . . is "not certain or capable of easy computation, the court may hold whatever hearing or inquiry it deems necessary.'"[15]

Applying this standard, the Court must first determine whether the requested compensatory damages are  "certain" or "capable of mathematical calculation or easy computation."  If not, then the Court must decide whether a hearing, or some other type of  "inquiry" is necessary.  It appears fairly clear that an evidentiary hearing is not required if the plaintiff can establish the amount of damages through affidavits and declarations.[16]  Some courts describe the standard as requiring the plaintiff to provide "definite figures contained in . . . documentary evidence or in detailed affidavits,"[17] or "detailed affidavits establishing the necessary facts."[18]  Other courts have waived the hearing requirement "where the plaintiff has filed reasonably detailed affidavits and exhibits

---

[14]*Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985) (citing *Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983)).

[15]*Tebbets v. Price Security,* No. 93-2129-JWL, 1995 WL 28967, at *3 (D. Kan. Jan. 20, 1995) (quoting *Beck*, 157 F.R.D. at 64).

[16]*See, e.g., id.*, at *4 ("Damages may be awarded only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts.") (quoting *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985)).

[17]*Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *accord Mierzwa v. City of Garfield,* No. CIV. A. 04-721 (JWB), 2005 WL 2077281, at *2 (D.N.J. Aug. 25, 2005); *Fustok v. Conticommodity Servs., Inc.*, 122 F.R.D. 151, 156 (S.D.N.Y. 1988).  *See also Hanrahan v. Ramirez,* No. 2:97-CV-747 RAP RC, 1998 WL 34369997, at *3 (C.D. Cal. June 3, 1998) ("Damages [on default judgment] may also be fixed by evidence submitted in declarations or affidavits.").

[18]*United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir.1979) ("[D]amages for default judgment should not have been awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts.").

pertaining to the damages incurred and where the defendant has failed to submit papers on the damages issue."[19]

Here, it is not clear whether the compensatory damages should be deemed "a sum certain," "capable of mathematical calculation" or "capable of easy computation."  The Complaint merely alleges that Mr. Dooley's wrongful conduct has resulted in Plaintiff losing sales and profits and business opportunities, the value of which exceeds $75,000.  With its Amended Application for Default Judgment, Plaintiff, however, has provided the declaration of its President and sole shareholder, Brian Meitler, in which he calculates the damages.[20]

Mr. Meitler calculates the lost profits from two customers, Smurfit-Fresno and Columbus Container, as follows.  Mr. Meitler first states he "believes" that had Mr. Dooley not encouraged them to stop buying from Plaintiff each would have continued purchasing from Plaintiff for an indefinite period.[21]  He further states that he has reviewed the  prior purchase history of these two companies and averaged the monthly profits that Plaintiff made from them in the past.[22]  He calculated the average monthly profit from Smurfit-Fresno as $480 per month and $580 per month

---

[19]*U.S. v. Crichlow,* No. 02 CV 6774 (NG), 2004 WL 1157406, at *4 (E.D.N.Y. Apr. 9, 2004).

[20]*See* Decl. of Brian Meitler, attached as Ex. 4 to Am. App. for Default J. (doc. 45).

[21]*Id.* ¶ 6.

[22]*Id.* ¶ 8.

from Columbus Container.[23]  He multiplied those monthly averages by 24 months (the duration of

Plaintiff's non-compete period), and estimated that Plaintiff has lost $25,400 of their business.[24]

It is unclear whether this declaration is sufficient to meet the standard.  A threshold question

that must be decided is whether the Court should take this declaration at face value or whether it

should require more than Mr. Meitler's "belief" that these two companies would have continued to

purchase from Plaintiff over the twenty-four months at issue and whether Mr. Meitler's method for

calculating the lost profits is valid.

Out of an abundance of caution, the Court concludes that an evidentiary hearing should be

held to determine the amount of Plaintiff's compensatory damages. The Court finds that Mr. Dooley

should be given the opportunity to provide whatever evidence he might have to controvert Mr.

Meitler's testimony, including Mr. Meitler's "belief" that the two customers would have continued

to do business with Plaintiff and to present any other evidence that Plaintiff might have regarding

the calculation of Plaintiff's damages.  Accordingly, the Court concludes that a hearing should be

held regarding the amount of compensatory damages to be awarded.

### D.    Injunctive Relief

The Court was unable to find any case law directly addressing when injunctive relief may

be entered upon default.  As noted above, however, Rule 54(c) requires that the default judgment

"not be different in kind from . . . that prayed for in the demand for judgment."

The Prayer for Relief in Plaintiff's Complaint seeks an order "enjoining Defendants from

violating any of the restrictive covenants and confidentiality provisions of the Brokerage Agreement

---

[23]*Id.* ¶ 9.

[24]*Id.* ¶¶ 10-11.

and Employment Agreement."[25]   The Complaint alleges the following with respect to those

restrictive covenants and confidentiality provisions:

1. Pursuant to Paragraph 7 of the Brokerage Agreement, Mr. Dooley agreed to refrain from manufacturing or selling any competing products for one year after termination of the Brokerage Agreement and from soliciting any of Plaintiff's customers for two years after termination of the Brokerage Agreement;[26]

2. Pursuant to Paragraph 9 of the Brokerage Agreement, Mr. Dooley agreed not to use or disclose any of Plaintiff's confidential information for an indefinite period of time;[27]

3. On September 16, 2004, the parties, by mutual agreement, terminated the Brokerage Agreement, and Mr. Dooley entered into an Employment Agreement with Plaintiff;[28]

4. The Employment Agreement provided that the restrictive covenants and confidentiality provisions of the Brokerage Agreement would survive termination of the Brokerage Agreement;[29]

5. In addition to the restrictive covenants to which Mr. Dooley agreed in the Brokerage Agreement and which remained in effect, Mr. Dooley further agreed in Paragraph 6.a of the Employment Agreement not to operate, own, control, participate in, consult with, or be employed by any competitor of Plaintiff in Kansas and nine other specified states, for a period of one year after termination;[30]

6. Mr. Dooley also agreed in Paragraph 6.c of the Employment Agreement not to solicit, divert, take away or attempt to take away any person or entity that

---

[25]Compl. (doc. 1), Prayer for Relief, ¶g.

[26]*Id.* ¶¶14-15.

[27]*Id.* ¶¶ 16-18.

[28]*Id.* ¶ 30.

[29]*Id.* ¶ 31.

[30]*Id.* ¶ 35.

was a customer of Plaintiff, for a period of two years after termination; and[31]

7.      Mr. Dooley also agreed in Paragraph 4 of the Employment Agreement not to use or disclose any of Plaintiff's confidential information, for an indefinite period.[32]

Plaintiff filed a Motion for Temporary Restraining Order ("TRO") (doc. 2) on April 20, 2005, which Judge Lungstrum granted in a May 18, 2006 Order.[33]  The TRO was entered after Judge Lungstrum held an evidentiary hearing, at which time he heard testimony from Brian Meitler. Although Mr. Dooley did not appear at the hearing, he was given notice and the opportunity to appear.[34]

Judge Lungstrum stated his reasons for entering the TRO on the record at the hearing.[35]  In granting Plaintiff's request for a TRO, Judge Lungstrum stated on the record that there "was an excellent and very comprehensive presentation of evidence to support the request made by the

---

[31]*Id.* ¶35.  The Court notes that the Complaint contains an apparent typographical error, as it states that the Employment Agreement's solicitation restriction is for only *one* year following termination.  The Employment Agreement (attached as Ex. B to the Compl.) expressly states that the restriction lasts for *two* years.  In addition, the evidence presented at the hearing on Plaintiff's Motion for Temporary Restraining Order was consistent with the Employment Agreement.  Finally, Mr. Dooley failed to respond to a request for admission that the Employment Agreement (which was attached to the request and which was a copy of the same document attached to the Complaint) was a true and correct copy of the Employment Agreement that he had entered into with Plaintiff.  Thus, there is no dispute that the Employment Agreement contains a *two-year* restriction against solicitation.

[32]*Id.* ¶36.

[33]*See* TRO (doc. 13).

[34]*See* Mot. for TRO (doc. 2); Order Setting Hr'g on Mot. for TRO (doc. 6); TRO (doc. 9).

[35]*See generally* Tr. of TRO Hr'g, attached as Ex. 1 to Pl.'s Am. Application for Default J.).

plaintiff."[36]  The Court finds sufficient evidence was presented at the TRO hearing to justify the entry of default judgment as to injunctive relief.  The Court will issue its specific ruling regarding the requested injunctive relief at the time the Court issues its ruling on compensatory damages.

### E.    Punitive Damages

In its Complaint, Plaintiff seeks punitive damages in excess of $75,000, based on Mr. Dooley's claimed willful and malicious conversion.  In the Complaint, Plaintiff also seeks exemplary damages based on Plaintiff's claimed misappropriation of trade secrets.

In its Amended Application for Default Judgment, Plaintiff states that it is seeking a total of $50,000 in punitive and exemplary damages.  Plaintiff seeks punitive damages pursuant to K.S.A. 60-3702(d), which allows for the award of such damages where the factfinder determines the defendant has "acted toward the plaintiff with willful conduct, wanton conduct, fraud, or malice." Plaintiff also seeks exemplary damages pursuant to K.S.A. 60-3322(b), which provides for the award of exemplary damages for willful or malicious misappropriation of trade secrets.  The statute limits the amount of exemplary damages to no more than twice the amount of actual damages awarded for the misappropriation.[37]

K.S.A. 60-3702(a) sets fort the statutory scheme for awarding punitive damages under Kansas law.  It provides as follows:

> In any civil action in which exemplary or punitive damages are recoverable, the trier of fact shall determine, concurrent with all other issues presented, whether such

---

[36]*Id.* 58:2-5.

[37]K.S.A. 60-3322(b).

11

damages shall be allowed.  If such damages are allowed, a separate proceeding shall be conducted by the court to determine the amount of such damages to be awarded.[38]

At that separate proceeding to determine the amount, the Court is to consider the seven factors set forth in K.S.A. 60-3702(b):

> (1) The likelihood at the time of the alleged misconduct that serious harm would arise from the defendant's misconduct;
> (2) the degree of the defendant's awareness of that likelihood;
> (3) the profitability of the defendant's misconduct;
> (4) the duration of the misconduct and any intentional concealment of it;
> (5) the attitude and conduct of the defendant upon discovery of the misconduct;
> (6) the financial condition of the defendant; and
> (7) the total deterrent effect of other damages and punishment imposed upon the defendant as a result of the misconduct, including, but not limited to, compensatory, exemplary and punitive damage award to persons in situations similar to those of the claimant and the severity of the criminal penalties to which the defendant has been or may be subjected.[39]

As noted above, *liability* for the punitive damages has been established.  The Court only needs to establish the *amount*. The issue before the Court, therefore, is what should the K.S.A. 60-3702(b) "proceeding" consist of?  In other words, is an evidentiary hearing required for the Court to consider these various factors?  Or, may the factors be considered on the basis of affidavits presented by Plaintiff?

In *American Water Purification, Inc. v. Barkley Manufacturing and Engineering, Inc.*,[40] a defendant moved to set aside a default judgment entered against her by the clerk of the court, in part

---

[38]K.S.A. 60-3702(a).

[39]K.S.A. 60-3702(b).

[40]No. 87-1003-C, 1989 WL 31397 (D. Kan. Mar. 2, 1989).

because no evidentiary hearing on the amount of damages had been held.[41]  Judge Crow noted that

because the determination of an appropriate amount of punitive damages "entails weighing

numerous factors" the condition of a sum certain was not met.[42]  He observed: "Punitive damages

. . . are not a sum certain and often require evidentiary hearings to determine an appropriate

amount."[43]  Based in part on the plaintiff's failure to meet the condition of a sum certain, Judge

Crow set aside the default judgment.[44]

  The *Water Purification* case was decided under Rule 55(b)(1), which allows for the entry

of default judgment when the claim is "for a sum certain or for a sum which can by computation be

made certain."  Nonetheless, the rule from that case appears equally applicable to a case where

default judgment is entered by the Court, where the damages must be a liquidated sum or one

capable of mathematical calculation.  Because the various factors of K.S.A. 60-3702(b) — some of

which are fairly subjective — must be considered, it hardly makes sense to say that the amount of

punitive damages is a "liquidated sum" or a sum that is "capable of mathematical calculation."

Thus, it follows that an evidentiary hearing is necessary.

  Judge Lungstrum addressed the award of punitive damages on default in two opinions

handed down in *Beck v. Atlantic Contracting Co., Inc.*[45]  In that case, Judge Lungstrum determined

the amount of punitive damages to be awarded, at least in part, on the basis of affidavits provided

---

[41]*Id.* at *3.

[42]*Id.*

[43]*Id.*

[44]*Id.*

[45]157 F.R.D. 61, 64 (D. Kan. 1994) (hereinafter referred to as "Beck I"); No. 93-2480-JWL, 1994 WL 608598 (D. Kan. Oct. 14, 1994) (hereinafter referred to as "Beck II").

by the plaintiff.[46]  It is not clear, however, whether the affidavits were the only evidence considered, because the Court had earlier held an evidentiary hearing on damages.  It was following that hearing that the Court asked the plaintiff to provide "further evidence . . . by way of affidavit or other sworn testimony" to enable the court to make a reasonable determination of the amount of punitive damages to be awarded.[47]

Plaintiff in this case has provided  persuasive information and argument regarding the various K.S.A. 60-3702(b) factors in his Amended Application for Default Judgment and the affidavit of Brian Meitler.  From that information, the Court could arguably determine that an award of $50,000 would be reasonable.  Information about two important factors, however, is lacking: Mr. Dooley's financial condition[48] and the profitability of his misconduct.[49]

A defendant's financial condition is not only a factor to be considered under K.S.A. 60-3702(b), but also a factor to be considered in determining the maximum amount of the award. K.S.A. 60-3702(e) provides that any award of exemplary or punitive damages may not exceed the lesser of the defendant's annual gross income[50] or five million dollars.  Thus, Mr. Dooley's annual

---

[46]See Beck II, 1994 WL 608598, at *3 (awarding punitive damages in the amount of $110,000).

[47]Beck I, 157 F.R.D. at 65.

[48]See K.S.A. 60-3702(b)(6) (financial condition of the defendant).

[49]See K.S.A. 60-3702(b)(4) (profitability of the defendant's misconduct).

[50]K.S.A. 60-3702(e) states as follows:

No award of punitive damages may exceed the lesser of:  (1) the defendant's highest gross annual income earned for any one of the five years immediately before the act for which such damages are awarded, unless the court determines such amount is clearly inadequate to penalize the defendant, then the court may award up to 50% of

(continued...)

gross income is an important factor for the Court to consider.  This is particularly true inasmuch as Mr. Dooley states in his answer that "Defendant has no savings, no real assets, is unemployed, and thus cannot afford legal representation."[51]

In light of the above, the Court finds it appropriate to hold an evidentiary hearing to consider the various factors set out in K.S.A. 60-3702 (b) and (e).  Although Mr. Dooley may or may not choose to appear at the hearing, the Court seeks to insure that  Mr. Dooley is given the opportunity to present evidence regarding the various factors before any award of punitive damages is imposed.[52]

## F.    Attorney Fees

Finally, Plaintiff requests in its Amended Application for Default Judgment that it be allowed to recover its attorney fees pursuant to K.S.A. 60-3323, which provides for the award of reasonable attorney fees to a party prevailing on a trade secret misappropriation claim "where willful and malicious misappropriation exists."[53]  Plaintiff indicates in its Amended Application that it will file an application for fees, with appropriate supporting materials, after the Court determines that fees should be allowed

---

[50](...continued)
the net worth of the defendant, as determined by the court; or (2) $5 million.

[51]*See* Answer (doc. 5) ¶ 1.

[52]In the event Mr. Dooley declines to appear at the hearing, the Court may still award punitive damages despite the fact that Plaintiff's evidence on some of the factors may be incomplete or even non-existent due to Mr. Dooley's failure to appear at the hearing and/or appear for his deposition.  Judge Lungstrum ruled in *Beck II* that the defaulting defendant's failure to participate in the action should not prevent a plaintiff from recovering punitive damages.  He held: "The court does not believe that a defendant's default, resulting in a plaintiff's inability to discover evidence on each of the criteria spelled out in K.S.A. 60-3702(b), should result in barring a plaintiff from the recovery of punitive damages."  *Beck II*, 1994 WL 608598 at *1.

[53]K.S.A. 60-3323.

As noted above, the Court must accept as true a plaintiff's allegations that a defaulting defendant engaged in willful and malicious conduct.[54] Here, Plaintiff alleges in its Complaint that Mr. Dooley maliciously misappropriated Plaintiff's trade secrets, and it expressly asserted a claim to recover its attorneys fees pursuant to the Kansas Trade Secret Act, K.S.A. 60-3320, *et seq.*[55] Accordingly, the Court accepts as true Plaintiff's allegation that Mr. Dooley acted maliciously in misappropriating Plaintiff's trade secrets, and the Court holds that Plaintiff is entitled to recover its reasonable attorney fees pursuant to K.S.A. 60-3323.

The Court directs Plaintiff to file an application for attorney fees, indicating the amount of fees sought, along with time records, affidavits, or other evidence supporting the amount sought. The application shall be filed within **ten (10) days** of the conclusion of the evidentiary hearing held in this matter. Mr. Dooley shall have **ten (10) days** after the application is filed to file any opposition thereto.

## III.   Conclusion

After considering Plaintiff's Amended Application for Default Judgement and the record before the Court, the Court accepts as true Plaintiff's allegations that Defendant Dooley breached the confidentiality provisions and restrictive covenants contained in the Brokerage and Employment Agreements. The Court also accepts as true Plaintiff's allegations that Mr. Dooley converted Plaintiff's website and misappropriated Plaintiff's trade secrets, i.e., Plaintiff's customer information and customer leads. Thus, the Court finds there is no need to hold a hearing with respect to Mr.

---

[54]*See supra,* notes 8 & 9.

[55]*See* Compl. (doc. 1), ¶¶ 60, 69.

16

Dooley's *liability* for the claimed  breach of contract, conversion and misappropriation of trade secrets.

Similarly, the Court accepts as true Plaintiff's claims that Mr. Dooley acted wilfully and maliciously.  The Court therefore holds that Plaintiff is entitled to recover punitive and exemplary damages pursuant to K.S.A. 60-3702  and 60-3322(b), and attorney fees, pursuant to K.S.A. 60-3323.  The Court finds there is no need to hold a hearing with respect to Mr. Dooley's *liability* for punitive and exemplary damages and attorney fees.

The Court does, however, find it appropriate and necessary to hold an evidentiary hearing to determine the appropriate amount of Plaintiff's compensatory and punitive damages.  A separate Order will be issued setting the date and time for such an evidentiary hearing.

In addition, the Court concludes that Plaintiff is entitled to an order granting permanent injunctive relief. The Court will enter its injunction at the time the Court enters its order on Plaintiff's damages.

With respect to Plaintiff's request for attorney fees, Plaintiff is directed to file an application setting forth the amount of  fees requested, with supporting time records, affidavits or other evidence.  Said application shall be filed within **ten (10) days** of the conclusion of the evidentiary hearing.  Mr. Dooley shall file his response thereto, if any, within **ten (10) days** after the filing of the application.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 1st day of November 2006.

s/ David J. Waxse
David J. Waxse
U.S. Magistrate Judge

cc:     All counsel and *pro se* parties